Theodore **FLEISCHMANN**, Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Seahorse Coastal Assistance & Towing and State Insurance Fund, Respondents.**

**No. 1401, Docket 96–4146.**

United States Court of Appeals,
Second Circuit.

Argued April 1, 1997.

Decided Feb. 23, 1998.

Jacob Shisha, New York City (Ralph J. Mellusi, Stephen B. Roberts, Tabak & Mellusi, of counsel), for Theodore Fleischmann.

Joshua Gillelan, Washington, DC (J. Davitt McAteer, Acting Solicitor of Labor, Department of Labor, Washington, DC, Carol A. De Deo, Associate Solicitor, Samuel J. Oshinsky, Counsel for Longshore, Laura J. Stomski, Attorney, of counsel), for Director, Office of Workers' Compensation Programs.

Richard A. Cooper, New York City (Elissa B. Landa, Fischer Brothers), for Seahorse Coastal Assistance & Towing and State Insurance Fund.

Before OAKES and KEARSE, Circuit Judges, and MURTHA, Chief District Judge.*

OAKES, Senior Circuit Judge:

Appellant Theodore Fleischmann appeals the judgment entered October 4, 1994, by G. Marvin Bober, *Associate Chief Administrative Law Judge* ("ALJ Bober"), denying his application for benefits. Fleischmann was injured while repairing a washed-out bulkhead in a canal. ALJ Bober held that Fleischmann was not entitled to coverage under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1994), because he was not injured on navigable waters, and because he did not qualify as an "employee" within the meaning of § 902(3). We reverse and remand, finding that Fleischmann meets the LHWCA's standards both as to his status as an employee and as to the situs of his injury.

Reversed and remanded.

## I.

### Facts

The parties do not dispute the following facts. Petitioner Theodore Fleischmann was employed in 1991 by Respondent Seahorse Coastal Assistance & Towing ("Seahorse") as a pile driver and a laborer. Fleischmann worked on constructing bulkheads, piers, and floating docks. In October of 1991, Fleischmann was helping to remove and replace a bulkhead at Center Island, on a canal off Oyster Bay leading to the northern shore of Long Island Sound. While ordinarily a bulkhead, which acts as a retaining wall for land, must border land on one side and water on the other, a large part of this bulkhead had collapsed forward into the water when the land behind had washed into the canal in a series of storms. A private residence abut-

ted the area where the bulkhead had collapsed. The water contained a floating dock belonging to the property owner, to which a boat belonging to the owner's employee was tied. The completed bulkhead would prevent erosion of the land into the water.

Seahorse built the new bulkhead by driving piles deep into the bed of the canal, and attaching a horizontal retaining system to those piles. At the time of Fleischmann's accident, twelve to fifteen feet of water and muck still separated the solid land of this residence from the bulkhead. The repaired bulkhead was attached to the land at both ends, but pores in the bulkhead wall permitted water to seep behind it.

To complete construction of the bulkhead, Fleischmann helped to move material from the canal bottom to fill in the area landward of the bulkhead. Seahorse used material from the bottom of the canal as filler, to save money on material and transportation, and to deepen the water in the canal. Fleischmann and other Seahorse workers had nearly completed the process of moving dredging material behind the bulkhead at the time of Fleischmann's accident.

While repairing the bulkhead, Fleischmann worked primarily on a floating dock, which was tied to a barge. The equipment used to repair the bulkhead was floated to the job site on a barge belonging to Seahorse, and Fleischmann testified that he had helped to tie and untie the work boats that moved the barge there.

On October 22, 1991, Fleischmann was cleaning up the barge and removing lumber from the floating dock. At the time of his accident, he was on top of the bulkhead and moving the barge by pulling on a tow line. As Fleischmann reached for a second tow line, he slipped on the top of the bulkhead and fell over the landward side. His foot caught on the bulkhead, and he fell into the dredging material and water. Although Fleischmann got wet when he fell, his trapped boot kept him from going under the water completely. At the time Fleischmann fell, the tide was such that there was enough

---

* The Honorable J. Garvan Murtha, Chief District Judge of the United States District Court for the District of Vermont, sitting by designation.

water behind the bulkhead to cover his body. At the point where he fell, he was approximately fifteen feet from solid land.

## II.

### The ALJ's Decision

Fleischmann sustained injuries to his right knee from the fall and applied for benefits under the LHWCA. At his hearing, the parties stipulated that Fleischmann was "deemed to be temporary totally disabled from the date of accident." His petition was heard by Administrative Law Judge ("ALJ") Aaron Silverman, who retired prior to deciding the case. ALJ G. Marvin Bober was assigned to the matter and rendered a decision solely on the written record.

Section 920(a) of the LHWCA grants a presumption of coverage, which applies unless the employer presents substantial evidence to rebut the presumption. 33 U.S.C. § 920(a) (1994). ALJ Bober held that the § 920(a) presumption did not apply to questions of situs or status, and, thus, that Fleischmann had the burden of proving facts establishing his coverage under the Act.

ALJ Bober noted that to establish coverage under the LHWCA, Fleischmann had to establish both that he had status as an "employee" under § 902(3) and that the injury occurred on a situs covered under § 903(a). ALJ Bober also noted that if Fleischmann could show that he were injured on "navigable waters," as defined before the 1972 amendments to the LHWCA, he would be covered, without any further showing regarding his employee status, because the 1972 amendments were designed to expand, not to limit, coverage. ALJ Bober found that although the canal itself constituted navigable waters, Fleischmann was not injured on actual navigable waters as defined before 1972, because water in the area where Fleischmann fell had been permanently withdrawn from the canal. ALJ Bober went on to find that Fleischmann lacked status as an "employee" within the meaning of § 902(3).

The Claimant's job was not related to the movement of cargo between ship and land transportation, nor did it serve to facilitate these functions. Several Supreme Court decisions addressing Section 2(3) have "clearly decided that, aside from the specified occupations, land-based activity occurring within the § 903 situs will be deemed maritime only if it is an integral or essential part of loading or unloading a vessel." As the Claimant's employment did not entail such duties, it is not encompassed within the coverage afforded by Section 2(3).

He therefore made no ruling on the question whether Fleischmann's accident occurred upon a covered situs, as defined under the amended LHWCA.

Fleischmann appealed to the Benefits Review Board ("BRB"), and the Office of the Solicitor filed an amicus letter in his support. Because the BRB failed to render a decision within one year, the ALJ's decision was deemed affirmed. *See* Omnibus Consolidated Rescission and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321, 1321–219 (1996). Fleischmann now brings direct appeal to our court, under § 921(c) of the LHWCA.

## III.

### Discussion

#### A. Standard of Review

■■■ The BRB hears appeals from decisions made by an ALJ under the LHWCA. 33 U.S.C. § 921(b)(3) (1994). The BRB must apply a narrow standard of review to those decisions and is required to affirm the ALJ's findings of fact as long as they are supported by substantial evidence in the record considered as a whole. *Id.; see also King v. Director, Office of Workers' Comp. Programs,* 904 F.2d 17, 18 (9th Cir.1990) (per curiam); 20 C.F.R. § 802.301 (1997). We review BRB decisions "for errors of law and for adherence to the statutory standard governing the [BRB's] review of the administrative law judge's factual determinations." *King,* 904 F.2d at 18 (citation omitted).[1]

---

1. Fleischmann argues that we ought to apply a more stringent standard of review to ALJ Bober's

Decision and Order because ALJ Bober was not the actual trier of fact for purposes of the hear-

■ Although we agree with Fleischmann that the ALJ erred by failing to apply the § 920(a) presumption of coverage to questions of fact and by placing the burden of production of evidence on Fleischmann, this error does not affect our ruling. Because we base our ruling on essentially undisputed facts of record, addressing legal issues only, we would reach the same conclusion even if we determined that the presumption did not apply.

## B. Coverage Under the LHWCA

■ Before 1972, the LHWCA covered only employees who were injured on actual navigable waters; the LHWCA did not cover employees injured on land, or on structures connected to land, no matter how close to the water the injury occurred. *See Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 223–24, 90 S.Ct. 347, 354, 24 L.Ed.2d 371 (1969) (holding that the LHWCA did not extend to injuries sustained on a pier). Recognizing that "compensation . . . should not depend on the fortuitous circumstance of whether the injury occurred on land or over water," Congress amended the LHWCA in 1972. H: Rep. No. 92–1441, at 10 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4708. The 1972 amendments extended coverage under § 903(a) to include injuries that occurred "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 33 U.S.C. § 903(a) (1994). While Congress expanded the number of locations of injury that would allow an employee to qualify for coverage, it also added language to § 902(3) to restrict the kinds of employees that the LHWCA covers. Under the 1972 amendments, an injured worker must be "engaged in maritime employment" to be covered under the LHWCA. 33 U.S.C. § 902(3). Thus, the LHWCA as amended requires both (1) that a worker be engaged in "maritime employment" under § 902(3), and (2) that his or her injury occur on navigable waters or on one of

the listed areas under § 903(a). *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 265, 97 S.Ct. 2348, 2357, 53 L.Ed.2d 320 (1977). These two requirements are respectively referred to as the "status" and "situs" requirements.

■ Because Congress intended the 1972 amendments to expand the scope of coverage, an employee can still establish coverage by demonstrating that he or she satisfies the situs test as it existed before it was expanded by the 1972 amendments, without having to make any further showing regarding status as an employee under § 902(3). *See Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs.*, 459 U.S. 297, 325, 103 S.Ct. 634, 651, 74 L.Ed.2d 465 (1983); *McCarthy v. The Bark Peking*, 716 F.2d 130, 132–33 (2d Cir.1983) (where a painter was injured on actual navigable waters in the course of his employment, "no more is required to qualify . . . as a statutory 'employee'"). Because Fleischmann has established the requirements for coverage under the LHWCA as amended, however, we do not need to determine whether the landward side of the bulkhead constituted actual navigable waters for purposes of determining whether he satisfies the pre-amendment test of coverage.

### 1. Status

■ ALJ Bober decided that Fleischmann did not qualify as an employee under § 902(3) because "his job was not related to the movement of cargo between ship and land transportation, nor did it serve to facilitate these functions." He relied on *Chesapeake and Ohio Railway v. Schwalb*, which held that "aside from the specified occupations, land-based activity occurring within the § 903 situs will be deemed maritime only if it is an integral or essential part of loading or unloading a vessel." *Schwalb*, 493 U.S. 40, 45, 110 S.Ct. 381, 384, 107 L.Ed.2d 278 (1989). Even while quoting *Schwalb*, however, the ALJ failed to note that *Schwalb*'s requirement regarding loading or unloading

ings; ALJ Silverman presided during that stage of the proceedings. However, we do not need to decide whether to apply a more stringent stan-

dard of review to findings of fact in this case, since we base our decision on facts that are undisputed in all salient respects.

a vessel applies only to land-based activity "aside from the specified occupations." *Id.* The Court in *Schwalb* explicitly exempted enumerated occupations from the requirement that the activity be an integral or essential part of loading or unloading a vessel, and read the Supreme Court's precedent as doing so. *See id.* at 46, 110 S.Ct. at 384 ("We also reiterated in *Herb's Welding, Inc. v. Gray* [470 U.S. 414, 423, 105 S.Ct. 1421, 1427, 84 L.Ed.2d 406 (1985)], that the maritime employment requirement as applied to land-based work *other than longshoring and the other occupations named in § 902(3)* is an occupational test focusing on loading and unloading.") (emphasis added).

■ The Director urges that Fleischmann, a marine construction worker, qualifies as a "harbor worker," one of the occupations specifically listed in § 902(3). While we owe no deference to the BRB, we do grant deference to the views of the Director of the Office of Workers' Compensation Programs, a Respondent in this case, with regard to questions of interpretation of the LHWCA. *See Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v. General Dynamics Corp.,* 982 F.2d 790, 795 (2d Cir. 1992); *Mallott & Peterson v. Director, Office of Workers' Comp. Programs, Dep't of Labor,* 98 F.3d 1170, 1172 (9th Cir.1996) (" '[C]onsiderable weight' is accorded to the statutory construction of the LHWCA urged by the Director." (quoting *Hunt v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 999 F.2d 419, 421 (9th Cir.1993))), *cert. denied,* —— U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997). If the Director's

interpretations and administrative policies are reasonable and consistent with the purposes of the LHWCA and with clearly expressed legislative intent, those interpretations control. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45 & nn. 9 & 11, 104 S.Ct. 2778, 2781–83 & nn. 9 & 11, 81 L.Ed.2d 694 (1984); *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125–26, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985).[2]

■ The Director's interpretation of the term "harbor worker" to include marine construction workers should be accorded deference because the term "harbor worker" is undefined and ambiguous, and because including marine construction workers within the meaning of "harbor worker" is reasonable and preserves the purposes of the statute. Generally, the Court has adjudged that "[t]he language of the 1972 Amendments is broad and suggests that we should take an expansive view of the extended coverage." *Caputo,* 432 U.S. at 268, 97 S.Ct. at 2359. Although we do not decide whether Fleischmann fell into actual navigable waters, it is undisputed that had he been injured while working on the floating dock rather than on the bulkhead itself, he would have been covered under *Perini.* One of Congress's purposes in amending the LHWCA was to "ensure that a worker who could have been covered part of the time by the pre–1972 Act would be completely covered by the 1972 Act." *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 75, 100 S.Ct. 328, 333, 62 L.Ed.2d 225 (1979).

---

2. Seahorse argues that we should not accord deference in this case because the Director's interpretation tends to expand the scope of coverage of the LHWCA. Because deference to administrative agencies is based on a congressional delegation of interpretive authority, Seahorse argues it is unlikely that Congress would delegate authority to an agency to determine its own jurisdictional reach. *See* Cass A. Sunstein, *Law and Administration After Chevron,* 90 Colum. L.Rev. 2071, 2097–2100 (1990). However, the Supreme Court has deferred to agency interpretations that arguably determine jurisdiction, and there appears to be no clear test for whether an interpretation should be considered "jurisdictional." *See id.* at 2098–2099 & nn. 126 & 132–133. The issue here, the meaning of "harbor

worker" within § 902(3), while arguably jurisdictional, does not evoke the concerns that would make it unlikely that Congress delegated authority to the agency for its determination. The agency does not seek to extend its authority to a large category of cases, nor to abdicate its enforcement power, and the expertise of the Director is relevant to the determination. *See id.* at 2100 ("[A] general rule of deference would be preferable even on jurisdictional questions, .... [where] the agency's competence bears on the resolution of jurisdictional ambiguities.... [T]he question is whether the agency is seeking to extend its legal power to an entire category of cases, rather than disposing of certain cases in a certain way or acting in one or a few cases.").

*See also Caputo,* 432 U.S. at 272, 97 S.Ct. at 2361.

■ Our finding that Fleischmann qualifies as a harbor worker also comports with the Supreme Court's and this circuit's reading of the requirements of § 902(3). ALJ Bober made a factual finding that Fleischmann's general employment responsibilities included "building bulkheads, piers, and floating docks." An employee can establish coverage under § 902(3) either by referring to his or her overall duties or to the particular project the employee was engaged in at the time of injury. *See Caputo,* 432 U.S. at 273, 97 S.Ct. at 2362 ("Both the text and the history [of the LHWCA] demonstrate a desire to provide continuous coverage throughout their employment to these amphibious workers who, without the 1972 Amendments, would be covered only for part of their activity."); *Browning v. B.F. Diamond Constr. Co.,* 676 F.2d 547, 548 (11th Cir.1982) ("[E]mployee status can be based upon the maritime nature of the employment as a whole or upon the maritime nature of the claimant's activity at the time of the injury."); *Hullinghorst Indus. v. Carroll,* 650 F.2d 750, 754 (5th Cir.1981).

The Second Circuit has determined that the category of "harbor worker" under § 902(3) requires some connection to ships. *See Fusco v. Perini N. River Assocs.,* 622 F.2d 1111, 1113 (2d Cir.1980) ("To come within § 2(3) a harborworker's activity must relate to ships...."). Although ALJ Bober did not make findings of fact with respect to whether the bulkhead was capable of mooring ships, Fleischmann's general employment of building piers and docks suffices to establish the requisite connection to ships to confer him with status as a harbor worker.[3] *Cf. Fusco,* 622 F.2d at 1113 (finding that employee injured in construction of sewage disposal plant did not establish the required connection to ships or navigation to qualify as a "harbor worker").

■ The reasonableness of categorizing Fleischmann as a harbor worker is supported by consistent decisions of the BRB involving marine construction workers. While the BRB, as opposed to the Director, does not merit deference, *see General Dynamics Corp.,* 982 F.2d at 795, the BRB's consistent decisions bear upon the reasonableness of the Director's interpretation. *See Morrison–Knudsen Constr. Co. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 461 U.S. 624, 635, 103 S.Ct. 2045, 2051, 76 L.Ed.2d 194 (1983) (considering the consistent practice of the BRB relevant in interpreting the LHWCA). The BRB has held workers on various shore-side structures to be harbor workers within § 902(3). *See Olson v. Healy Tibbitts Constr. Co.,* 22 Ben. Rev. Bd. Serv. (MB) 221, 224 (May 24, 1989) (finding a worker engaged in repairing a breakwater, whose duties included driving piling, loading and unloading barges, and light maintenance, to be covered as a harbor worker); *Bakke v. Duncanson–Harrelson Co.,* 8 Ben. Rev. Bd. Serv. (MB) 36, 39 (Feb. 24, 1978) (holding that a pile driver involved in the construction and repair of piers was a harbor worker); *Stewart v. Brown & Root, Inc.,* 7 Ben. Rev. Bd. Serv. (MB) 356, 366 (Jan. 12, 1978) (holding that a painter-sandblaster working on the construction site of a dry dock was a harbor worker), *aff'd sub nom. Brown & Root v. Joyner,* 607 F.2d 1087, 1090 n. 5 (4th Cir.1979). In *Trotti & Thompson v. Crawford,* 631 F.2d 1214, 1222 (5th Cir.1980), the court based its affirmance of coverage of a pier construction worker on the traditional maritime nature of the em-

---

**3.** Furthermore, it is not disputed that at the time of his injury Fleischmann had been assisting Seahorse in the process of filling in the area behind the bulkhead with material dredged from the bottom of the canal; Seahorse's president testified that, aside from financial considerations, the reason Seahorse dredged the bottom of the canal was to deepen the water, which would have the effect of increasing navigability. In addition, Seahorse did not dispute Fleischmann's testimony that when transporting Seahorse's equipment to the site of the bulkhead, Fleischmann rode upon a barge and engaged in the process of tying and untying the vessels used to transport it. *See Silva v. Hydro–Dredge Corp.,* 23 Ben. Rev. Bd. Serv. (MB) 123, 127 (Nov. 30, 1989) (per curiam) (considering whether any "ships or barges were used" in the construction project at issue, and whether "the harbor was dredged as part of the project" in determining whether an employee had status under § 902(3)).

ployment.[4] While the case did not present the issue of deference to the Director's definition of "harbor worker," the court indicated that it would consider defining "harbor worker" to include marine construction workers to be reasonable: "Our examination of the common usage and pre–1972 judicial construction of the term 'harbor worker' leaves us open as to what Congress intended the term to include." *Id.* at 1222 n. 19. We have concluded that Congress intended that we defer to reasonable definitions of the terms of the LHWCA put forward by the Department of Labor through the Director; including construction workers such as Fleischmann within the term "harbor worker" is reasonable and therefore comports with Congress's intent.

## 2. Situs

Under the 1972 amendments, a situs covered by the LHWCA includes navigable waters and "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a). In reading this section, the Supreme Court has noted that "it is not at all clear that the phrase 'customarily used' was intended to modify more than the immediately preceding phrase 'other areas.'." *Caputo*, 432 U.S. at 280, 97 S.Ct. at 2365. In finding that a pier that was not customarily used by

the employer for loading or unloading a vessel nevertheless constituted a covered situs, the Court read the legislative history of the LHWCA as evidencing "little concern with respect to how [the enumerated] facilities were used." *Id.* The Ninth Circuit has squarely held that the language "customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel," does not modify any of the enumerated structures. *Hurston v. Director, Office of Workers Comp. Programs*, 989 F.2d 1547, 1552 (9th Cir.1993).

▆ The Ninth Circuit in *Hurston* articulated a strictly structural definition of the term "pier": "a structure built on pilings extending from land to navigable water is an 'adjoining pier' within the meaning of 33 U.S.C. § 903(a)." *Id.* at 1553. It employed this definition to determine that a structure used only for storing and processing oil did constitute a pier for the purposes of § 903(a). Although the dissent in *Hurston* characterized the definition as "a literal interpretation," *id.* at 1554, and although the structure at issue in that case was called "Elwood Pier No. 1," the decision did not depend solely on the structure's nomenclature. Instead, the court focused primarily on the intent of Congress in amending the LHWCA. *Id.* at 1550–1553. The court noted that Congress's failure to define "pier" suggests that Congress intended to "leave the geographic areas

---

4. We wish to emphasize that we do not base our holding that Fleischmann has occupational status on any version of the test first articulated by the Ninth Circuit in *Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957, 961 (9th Cir.1975), and followed in many of the cases cited by Fleischmann, which framed its inquiry upon whether the employment bore "a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters.'" *Id.* This test tended to focus attention on the amount of time an employee spent working over navigable waters. *See, e.g., Odom Constr. Co. v. United States Dep't of Labor*, 622 F.2d 110, 113 (5th Cir.1980); *Boudloche v. Howard Trucking Co.*, 632 F.2d 1346, 1347 (5th Cir.1980). The Second Circuit has rejected an inquiry based upon time in the water. *See Fusco*, 622 F.2d at 1113 ("It is not significant that ... the claimants performed part or all of their work while upon floating stages or upon barges [located in navigable waters].") Furthermore, *Herb's Welding v. Gray* has been read to have rejected the *Weyerhaeuser* test

in determining whether non-enumerated occupations qualified as maritime employment. *See Coloma v. Director, Office of Workers Comp. Programs*, 897 F.2d 394, 398–99 (9th Cir.1990) (reading *Herb's Welding* and *Schwalb* to require that land-based activity be covered only if an essential part of loading or unloading a vessel, and implicitly to overrule cases that found land-based activity other than enumerated occupations covered only on the basis of a significant relationship with maritime commerce); *Sea–Land Service, Inc. v. Rock*, 953 F.2d 56, 66 (3rd Cir.1992). Because we defer to the Director's definition of "harbor worker" to include marine construction workers such as Fleischmann, and because *Schwalb* clearly excepted *enumerated* occupations from the requirement of a connection to loading and unloading a vessel, we need not decide whether Fleischmann's work would qualify for coverage under the status test for non-enumerated maritime employees as articulated in *Herb's Welding* and *Schwalb*.

such as a pier or wharf unlimited so long as they adjoin navigable waters of the United States." *Id.* at 1551. The court guided itself by the ameliorative purpose of the 1972 amendments: "the 1972 amendments were intended to 'provide[ ] continuous coverage to a worker who would otherwise be covered for only a part of his activity' and ... [to] alleviate[ ] the anomaly of a longshoreman's walking in and out of coverage depending on which side of the gang plank an injury occurred." *Id.* at 1552 (quoting *Williams v. Director, Office of Workers Comp. Programs,* 825 F.2d 246, 247 (9th Cir.1987)).

■ We adopt the majority's reasoning in *Hurston.* The bulkhead at issue, built on pilings and extending into navigable water, constitutes a pier within the meaning of § 903(a). That the bulkhead is not called a pier does not affect our determination. This case exemplifies the concerns that fueled the 1972 amendments; Fleischmann would clearly have been covered had he been injured while working on a work platform only several feet away, where he spent a substantial portion of his work hours. Although the line demarking a covered situs has to be drawn somewhere, Congress made it clear in enacting the 1972 amendments that it considered the water's edge an arbitrary place to draw it. Congress did not want a system in which coverage depend[ed] on the "fortuitous circumstance of whether the injury ... occurred on land or over water." *Caputo,* 432 U.S. at 272, 97 S.Ct. at 2361 (quoting H.R. Rep. 1441, at 10 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4708).

■ The BRB has also focused on the physical composition of shore-side structures and has allowed a range of structures to qualify as piers within the meaning of § 903(a). In doing so the BRB has found structures not ordinarily referred to as "piers" nevertheless to qualify as such under the statute. In *Olson,* the BRB found that a breakwater, located in an area containing a dock, constituted a "pier," considering that it helped to form and protect a harbor. *Olson,* 22 Ben. Rev. Bd. Serv. (MB) at 224. *See also Pulkoski v. Hendrickson Bros.,* 28 Ben. Rev. Bd. Serv. (MB) 298, 302 (Oct. 28, 1994) (analogizing a bulkhead designed to prevent land erosion to the breakwater in *Olson* and to the pier in *Hurston,* but declining to decide whether the bulkhead constituted an enumerated situs because the injury did not occur on the bulkhead). Here, the bulkhead would prevent erosion of the adjacent property into the water; the water contained a dock belonging to the property owner, to which a boat was tied, as well as other docks. That the area was residential does not affect our analysis. *See Eckhoff v. Dog River Marina,* 28 Ben. Rev. Bd. Serv. (MB) 51, 55 (Mar. 29, 1994) (per curiam) (finding a pier connected to employer's president's home and used only for non-commercial purposes nevertheless to be a covered situs under § 903(a)); *Ries v. Harry Kane, Inc.,* 13 Ben. Rev. Bd. Serv. (MB) 617, 620 (June 30, 1981) ("The fact that a facility is used exclusively by private pleasure craft is an insufficient reason for holding that it is not a harbor facility or that a claimant working on this facility is not a harbor-worker.").

Thus, we follow the direction of the Supreme Court and adopt the analysis of the Ninth Circuit in focusing on the structure of the bulkhead to find it to constitute a pier within the meaning of § 903(a).

### Conclusion

For the above reasons, we reverse and remand to the Benefits Review Board for determination of benefits.