KATHRYN LAFAYETTE *v.* GENERAL DYNAMICS CORPORATION/ELECTRIC BOAT DIVISION ET AL.
(SC 16420)

Borden, Norcott, Katz, Sullivan and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 11—officially released April 24, 2001

*Amy M. Stone,* for the appellant (plaintiff).

*Lucas D. Strunk,* with whom were *Peter D. Quay* and, on the brief, *James L. Pomeranz* and *Kristen L. Frazier,* for the appellees (defendants).

*Opinion*

BORDEN, J. The sole issue in this appeal is whether the doctrine of collateral estoppel operates to bar the adjudication of the issue of causation in this action under the Workers' Compensation Act (act); General Statutes § 31-275 et seq.; which was preceded by a judgment under the federal Longshore and Harbor Workers' Compensation Act (Longshore Act); 33 U.S.C. § 901 et seq. The plaintiff, Kathryn Lafayette, appeals[1] from a

---

[1] The plaintiff appealed from the decision of the workers' compensation review board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

Although the parties in their briefs do not address the issue of whether there has yet been a final judgment from which to appeal, we briefly address that issue here. We recently stated in *Cantoni* v. *Xerox Corp.,* 251 Conn. 153, 160–61, 740 A.2d 796 (1999), that "[i]n workers' compensation cases, [t]he test that determines whether . . . a decision [of the review board] is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." (Internal quotation marks omitted.) Because further proceedings in the present case would require the taking of additional evidence and the exercise of independent judgment, the plaintiff's

decision of the workers' compensation review board (review board) affirming the decision of the workers' compensation commissioner (commissioner). The commissioner had concluded that the doctrine of collateral estoppel did not bar the named defendant, the Electric Boat Division of General Dynamics Corporation (Electric Boat),[2] from adjudicating the issue of causation. We conclude that the doctrine of collateral estoppel applies in the present case. Accordingly, we reverse the decision of the review board.

This appeal comes to us after related federal litigation between the same parties involving some of the same issues. See *Lafayette* v. *General Dynamics Corp., United States Department of Labor, Office of Workers' Compensation Programs,* Nos. 1-30719/64586 (February 5, 1996). In light of the record in this case and the facts found in the federal proceeding, the following facts are undisputed for purposes of this appeal.

In January, 1965, Archie F. Lafayette, the plaintiff's decedent, began working as a test man for Electric Boat at its maritime facility in the town of Groton, where Electric Boat builds, repairs and overhauls submarines. In November, 1967, the decedent became a technical

appeal ordinarily would be dismissed for lack of a final judgment. In *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance,* 208 Conn. 187, 194, 544 A.2d 604 (1988), however, we held that the denial of a claim for collateral estoppel was "ripe for immediate appellate review." We stated that "the defense of collateral estoppel is a civil law analogue to the criminal law's defense of double jeopardy, because both invoke the right not to have to go to trial on the merits." Id., 195. Although the plaintiff in the present case is attempting to invoke collateral estoppel offensively, and not defensively, as did the plaintiffs in *Convalescent Center of Bloomfield, Inc.,* we similarly conclude today that the denial of a claim for collateral estoppel is ripe for immediate appellate review.

[2] The other defendants involved in the prior proceedings were Cigna Property and Casualty Company, National Employers Company and the second injury fund. The defendants involved in this appeal are Electric Boat, ACE USA and Travelers Property and Casualty, all of which filed a joint brief in this court.

aide for Electric Boat, but was laid off in October, 1970. He returned to the Electric Boat shipyard in April, 1973, resuming his duties as a technical aide—the capacity in which he essentially remained until his death.

In December, 1981, as part of its screening of certain employees exposed to various stimuli at the shipyard, Electric Boat took a chest x-ray of the decedent, which was read as abnormal as showing pleural scarring or plaques. Pulmonary function tests also taken at that time showed reduced vital capacity. Subsequent chest x-rays also were read as abnormal as showing pleural scarring. In 1983, the decedent complained of shortness of breath. In 1984, bilateral pleural plaques were reported. By 1987, the decedent's pulmonary capacity had decreased. In November, 1992, the decedent was admitted to the William W. Backus Hospital in Norwich for a chest biopsy, at which time Gail R. Weingast, a physician, reported the existence of a "[p]leural based mass with bilateral pleural thickening and small left pleural effusion." She suspected that the mass might be "mesothelioma in a patient with previous asbestos exposure." In a November, 1992 consultation report, Dennis E. Slater, a physician, stated that: (1) the decedent had worked at the Electric Boat shipyard for almost twenty-seven years; (2) during the 1960s, the decedent worked in test groups stripping ships of piping and had unprotected heavy exposure to asbestos; (3) chest x-rays in the early 1980s showed asbestosis; (4) the decedent also worked in the nuclear reactor compartments of submarines with definite exposure to radiation; and (5) the decedent had a long history of cigarette smoking, a habit that he had stopped twelve years previously. The decedent's condition rapidly declined, and he died in March, 1993. The decedent's death certificate identified, as the immediate cause of death, cardiopulmonary arrest resulting from lung cancer. Additional facts will be stated as necessary.

In May, 1994, the plaintiff, the decedent's dependent widow, filed two federal claims against Electric Boat seeking death benefits under the Longshore Act. The plaintiff alleged that the harm to the decedent, namely, his bilateral pleural plaques, his asbestos-related disease and his lung cancer, resulted from his exposure to and inhalation of asbestos at the Electric Boat shipyard. After a hearing, a United States Department of Labor administrative law judge (administrative judge) awarded death benefits to the plaintiff.[3]

Thereafter, the plaintiff applied, pursuant to the survivors' benefits provision of the act; General Statutes § 31-306;[4] for survivors' benefits as the surviving dependent

[3] Specifically, the administrative judge ordered Electric Boat, as a self-insurer, to pay the plaintiff death benefits for 104 weeks pursuant to § 9 of the Longshore Act, and ordered that, after the cessation of payments made by Electric Boat, the special fund established pursuant to § 44 of the Longshore Act pay continuing benefits pursuant to § 8 (f) of the Longshore Act. See 33 U.S.C. §§ 909, 944, 908.

[4] General Statutes § 31-306 provides: "Death resulting from accident or occupational disease. Dependents. Compensation. (a) Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows:

"(1) Four thousand dollars shall be paid for burial expenses in any case where the employee died on or after October 1, 1988. If there is no one wholly or partially dependent upon the deceased employee, the burial expenses of four thousand dollars shall be paid to the person who assumes the responsibility of paying the funeral expenses.

"(2) To those wholly dependent upon the deceased employee at the date of his injury, a weekly compensation equal to seventy-five per cent of the average weekly earnings of the deceased calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, as of the date of the injury but not more than the maximum weekly compensation rate set forth in section 31-309 for the year in which the injury occurred or less than twenty dollars weekly. (A) The weekly compensation rate of each dependent entitled to receive compensation under this section as a result of death arising from a compensable injury occurring on or after October 1, 1977, shall be adjusted annually as provided in this subdivision as of the following October first, and each subsequent October first, to

spouse. After a hearing to determine whether the doc-

provide the dependent with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309. If the maximum weekly compensation rate, as determined under the provisions of said section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing at the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury or October 1, 1990, whichever is later, shall be increased by the percentage of the increase in the maximum weekly compensation rate required by the provisions of said section 31-309 from the date of the injury or October 1, 1990, whichever is later, to such October first. The cost-of-living increases provided under this subdivision shall be paid by the employer without any order or award from the commissioner. The adjustments shall apply to each payment made in the next succeeding twelve-month period commencing with the October first next succeeding the date of the injury. With respect to any dependent receiving benefits on October 1, 1997, with respect to any injury occurring on or after July 1, 1993, and before October 1, 1997, such benefit shall be recalculated to October 1, 1997, as if such benefits had been subject to recalculation annually under this subparagraph. The difference between the amount of any benefits which would have been paid to such dependent if such benefits had been subject to such recalculation and the actual amount of benefits paid during the period between such injury and such recalculation shall be paid to the dependent not later than December 1, 1997, in a lump-sum payment. The employer or his insurer shall be reimbursed by the Second Injury Fund, as provided in section 31-354, for adjustments, including lump-sum payments, payable under this subparagraph for deaths from compensable injuries occurring on or after July 1, 1993, and before October 1, 1997, upon presentation of any vouchers and information that the Treasurer shall require. (B) The weekly compensation rate of each dependent entitled to receive compensation under this section as a result of death arising from a compensable injury occurring on or before September 30, 1977, shall be adjusted as of October 1, 1977, and October 1, 1980, and thereafter, as provided in this subdivision to provide the dependent with partial cost-of-living adjustments in his weekly compensation rate. As of October 1, 1977, the weekly compensation rate paid prior to October 1, 1977, to the dependent shall be increased by twenty-five per cent. The partial cost-of-living adjustment provided under this subdivision shall be paid by the employer without any order or award from the commissioner. In addition, on each October first, the weekly compensation rate of each dependent as of October 1, 1990, shall be increased by the percentage of the increase in the maximum compensation rate over the maximum compensation rate of October 1, 1990, as determined under the provisions of section 31-309 existing on October 1, 1977. The cost of the adjustments shall be paid by the employer or his insurance carrier who shall be reimbursed therefor from the Second Injury Fund as provided in section 31-

trine of collateral estoppel applied, by virtue of the

354 upon presentation of any vouchers and information that the Treasurer shall require.

"(3) If the surviving spouse is the sole presumptive dependent, compensation shall be paid until death or remarriage.

"(4) If there is a presumptive dependent spouse surviving and also one or more presumptive dependent children, all of which children are either children of the surviving spouse or are living with the surviving spouse, the entire compensation shall be paid to the surviving spouse in the same manner and for the same period as if the surviving spouse were the sole dependent. If, however, any of the presumptive dependent children are neither children of the surviving spouse nor living with the surviving spouse, the compensation shall be divided into as many parts as there are presumptive dependents. The shares of any children having a presumptive dependent parent shall be added to the share of the parent and shall be paid to the parent. The share of any dependent child not having a surviving dependent parent shall be paid to the father or mother of the child with whom the child may be living, or to the legal guardian of the child, or to any other person, for the benefit of the child, as the commissioner may direct.

"(5) If the compensation being paid to the surviving presumptive dependent spouse terminates for any reason, or if there is no surviving presumptive dependent spouse at the time of the death of the employee, but there is at either time one or more presumptive dependent children, the compensation shall be paid to the children as a class, each child sharing equally with the others. Each child shall receive compensation until the child reaches the age of eighteen or dies before reaching age eighteen, provided the child shall continue to receive compensation up to the attainment of the age of twenty-two if unmarried and a full-time student, except any child who has attained the age of twenty-two while a full-time student but has not completed the requirements for, or received, a degree from a postsecondary educational institution shall be deemed not to have attained age twenty-two until the first day of the first month following the end of the quarter or semester in which he is enrolled at the time, or if he is not enrolled in a quarter or semester system, until the first day of the first month following the completion of the course in which he is enrolled or until the first day of the third month beginning after such time, whichever occurs first. When a child's participation ceases, his share shall be divided among the remaining eligible dependent children, provided if any child, when he reaches the age of eighteen years, is physically or mentally incapacitated from earning, his right to compensation shall not terminate but shall continue for the full period of incapacity.

"(6) In all cases where there are no presumptive dependents, but where there are one or more persons wholly dependent in fact, the compensation in case of death shall be divided according to the relative degree of their dependence. Compensation payable under this subdivision shall be paid for not more than three hundred and twelve weeks from the date of the death

federal action, so as to preclude Electric Boat from contesting the causal connection between the decedent's death and his employment at Electric Boat, the commissioner concluded that the doctrine did not apply and, therefore, dismissed the plaintiff's assertion of collateral estoppel. The commissioner reasoned that the pertinent federal and state workers' compensation laws differ significantly and have different standards of proof with respect to the compensability of asbestos-related claims. Pursuant to General Statutes §§ 31-280b (b)[5] and

of the employee. The compensation, if paid to those wholly dependent in fact, shall be paid at the full compensation rate. The compensation, if paid to those partially dependent in fact upon the deceased employee as of the date of the injury, shall not, in total, be more than the full compensation rate nor less than twenty dollars weekly, nor, if the average weekly sum contributed by the deceased at the date of the injury to those partially dependent in fact is more than twenty dollars weekly, not more than the sum so contributed.

"(7) When the sole presumptive dependents are, at the time of the injury, nonresident aliens and the deceased has in this state some person or persons who are dependent in fact, the commissioner may in his discretion equitably apportion the sums payable as compensation to the dependents.

"(b) The dependents of any deceased employee who was injured on or after January 1, 1974, and who died not later than November 1, 1991, shall be paid compensation on account of the death retroactively to the date of the employee's death. The cost of the payment or adjustment shall be paid by the employer or his insurance carrier who shall be reimbursed therefor from the Second Injury Fund as provided in section 31-354 upon presentation of any vouchers and information that the Treasurer shall require.

"(c) The dependents of any deceased employee who was injured in an accident arising out of and in the course of employment before January 1, 1952, and who died, as a result of those injuries, after October 1, 1991, shall be paid compensation, under the provisions of this section, effective as of the date of death of any such employee. Notwithstanding the provisions of subsection (a) of this section, the weekly compensation rate for such dependents shall equal the amount of compensation the injured employee was receiving prior to death pursuant to section 31-307. Such weekly compensation rate shall hereafter be adjusted in accordance with the provisions of subsection (a) of this section. The cost of such payment or adjustment shall be paid by the employer or the insurance carrier of such employer who shall be reimbursed therefor from the Second Injury Fund provided for in section 31-354."

[5] General Statutes § 31-280b (b) provides: "The board shall review appeals of decisions made by compensation commissioners pursuant to this chapter.

31-301 (b),[6] the plaintiff filed a petition for review with the review board, which affirmed the decision of the commissioner. This appeal followed.

Before reaching the merits of the plaintiff's appeal, we briefly address the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Neither the review board nor this court has the power to retry facts. See *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996). . . . *Doe* v. *Stamford*, 241 Conn. 692, 696–97, 699 A.2d 52 (1997). It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25,

The chief shall annually select two compensation commissioners to sit with him to hear such appeals for a term of one year, except that no commissioner may sit in review of an award or decision rendered by him. The chief may select a third compensation commissioner to sit on the board if one of the board members is disqualified or temporarily incapacitated from hearing the matter under review."

[6] General Statutes § 31-301 (b) provides: "The appeal shall be heard by the Compensation Review Board as provided in section 31-280b. The Compensation Review Board shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the Compensation Review Board may hear additional evidence or testimony."

682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. *Doe* v. *Stamford,* supra, 697; see *Davis* v. *Norwich,* supra, 317. . . . *Dowling* v. *Slotnik,* 244 Conn. 781, 798, 712 A.2d 396, cert. denied [sub nom. *Slotnik* v. *Considine*], 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998)." (Internal quotation marks omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 641–42, 729 A.2d 212 (1999).

The plaintiff contends that the review board improperly concluded that the doctrine of collateral estoppel did not apply so as to preclude Electric Boat from relitigating the causal relationship between the decedent's death and his employment at Electric Boat. Specifically, the plaintiff contends that the doctrine applies because the issue of causation was fully litigated, actually decided and necessarily determined in the federal action, and that the plaintiff's burden of proof under the Longshore Act was the same as her burden of proof under our workers' compensation laws. Electric Boat argues that collateral estoppel should not apply because the administrative judge applied the so-called § 20 (a) presumption under the Longshore Act. See 33 U.S.C. § 20 (a). Electric Boat refers to that presumption as a "statutory benefit of the doubt" principle that does not exist under our workers' compensation laws. Stated another way, Electric Boat argues that the statutory presumption under the Longshore Act required the administrative judge to resolve any doubts in favor of the plaintiff, whereas our workers' compensation laws allow the commissioner to resolve any doubts in favor of either party. The substance of this claim can be distilled into two distinct subparts: (1) the application of the § 20 (a) presumption resulted in a lighter burden

of proof on the plaintiff in the federal action than would obtain in the state proceeding;[7] and (2) because of the § 20 (a) presumption, it is not possible to discern whether the issue of causation was actually litigated and necessarily determined. We agree with the plaintiff.

The fundamental principles underlying the doctrine of collateral estoppel are well established. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990)." (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 460, 736 A.2d 811 (1999). "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. . . . *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 316, 460 A.2d 1277 (1983). For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action*. It also must have been actually decided and the decision must have been necessary to the judgment. . . . *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988); see also *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991).

---

[7] In this connection, we presume that Electric Boat relies on the following exception to the application of the collateral estoppel doctrine, which precludes its application when "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or *the adversary has a significantly heavier burden than he had in the first action* . . . ." (Emphasis added.) 1 Restatement (Second), Judgments § 28 (4) (1982).

"An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, comment (h)]." (Emphasis in original; internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374 (1993).

"As a general proposition, the governing principle is that administrative adjudications have a preclusive effect when the parties have had an adequate opportunity to litigate. *United States* v. *Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1965). *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance*, 208 Conn. 187, 195, 544 A.2d 604 (1988); *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). [A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court. 2 Restatement (Second), Judgments § 83 (1)." (Internal quotation marks omitted.) *Carothers* v. *Capozziello*, 215 Conn. 82, 94, 574 A.2d 1268 (1990).

Mindful of these principles, we turn to the federal litigation underlying the plaintiff's assertion of collateral estoppel. As a threshold matter, however, a brief review of the relevant statutory framework of the Long-

shore Act is necessary to an understanding of that litigation. The Longshore Act "provides a comprehensive scheme governing the [workers' compensation] rights of an injured longshoreman." *Pallas Shipping Agency, Ltd.* v. *Duris*, 461 U.S. 529, 532, 103 S. Ct. 1991, 76 L. Ed. 2d 120 (1983). Section 9 of the Longshore Act governs the distribution of death benefits, and provides that a "widow or widower" is entitled to such benefits "[i]f the [employee's] injury causes death . . . ." 33 U.S.C. § 909 (b); see also 33 U.S.C. § 902 (11) (defining " '[d]eath,' " as "basis for a right to compensation," as "death resulting from an injury"); 33 U.S.C. § 902 (2) (defining " 'injury' " as "accidental injury or death arising out of and in the course of employment"); 33 U.S.C. § 902 (16) (defining " 'widow or widower' " as "the decedent's wife or husband living with or dependent for support upon him or her at the time of his or her death; or living apart for justifiable cause or by reason of his or her desertion at such time"). "Taken together, these statutes indicate that a surviving spouse qualifies for death benefits [under the Longshore Act] only if: (i) the survivor's deceased worker-spouse *dies from a work-related injury*; (ii) the survivor is married to the worker-spouse at the time of the worker-spouse's death; and (iii) the survivor is either living with the worker-spouse, dependent upon the worker-spouse, or living apart from the worker-spouse because of desertion or other justifiable cause at the time of the worker-spouse's death." (Emphasis added.) *Ingalls Shipbuilding, Inc.* v. *Director, Office of Workers' Compensation Programs*, 519 U.S. 248, 257, 117 S. Ct. 796, 136 L. Ed. 2d 736 (1997).

Once a prima facie case has been established for such death benefits, § 20 (a) of the Longshore Act provides a presumption that the claim is covered by the Longshore

Act. See 33 U.S.C. § 920 (a);[8] *Fleischmann* v. *Director, Office of Workers' Compensation Programs*, 137 F.3d 131, 137 (2d Cir. 1998). In order for a claimant to establish a prima facie case to invoke the presumption, the claimant must show that he has suffered an injury and that conditions existed in the workplace that could have caused the injury. *Bath Iron Works* v. *Brown*, 194 F.3d 1, 4 (1st Cir. 1999). If the so-called § 20 (a) presumption of coverage is invoked, the burden of going forward with the evidence shifts to the employer. In order to rebut the § 20 (a) presumption, the employer must introduce substantial evidence that the injury did not arise out of or in the course of employment. See 33 U.S.C. § 920 (a); *U.S. Industries/Federal Sheet Metal, Inc.* v. *Director, Office of Workers' Compensation Programs*, 455 U.S. 608, 611, 102 S. Ct. 1312, 71 L. Ed. 2d 495 (1982); *Fleischmann* v. *Director, Office of Workers' Compensation Programs*, supra, 134. If the employer offers substantial evidence that the injury was not work-related, the presumption falls out of the case entirely; *Del Vecchio* v. *Bowers*, 296 U.S. 280, 286, 56 S. Ct. 190, 80 L. Ed. 229 (1935); and the administrative judge must weigh all of the evidence in the record. The administrative judge may then rule in favor of the claimant only if he or she concludes that the claimant has met his or her burden of proving by a preponderance of the evidence that the injury was work-related. See *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, 512 U.S. 267, 277–78, 114 S. Ct. 2251, 129 L. Ed. 2d 221 (1994).

As stated previously, the plaintiff in the present case first filed a federal claim under § 9 of the Longshore

---

[8] Title 33 of the United States Code, § 920, provides in relevant part: "In any proceeding for the enforcement of a claim for compensation under [the Longshore Act] it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provisions of [the Longshore Act]. . . ."

Act in order to recover death benefits from Electric Boat, claiming that the decedent's death was caused by asbestos exposure at the Electric Boat shipyard. In support of her claim, at the hearing in the federal action, the plaintiff offered the deposition testimony of Michael Deren, the decedent's treating physician. Deren testified that the decedent's exposure to asbestos at Electric Boat was a contributing factor to the development of the decedent's cancer. The plaintiff also offered the April, 1995 report of Martin G. Cherniack, an associate professor of medicine, a board certified physician in internal and occupational medicine, and a well known pulmonary specialist. Cherniack had reviewed the decedent's medical records, and opined that: (1) the decedent "had benign asbestotic pleural disease"; (2) epidemiologic studies of pipefitters, shipyard workers, insulators, textile workers and asbestos cement workers demonstrated that "lung cancer rates are elevated in the cohort with 10-19 years of asbestos exposure"; and (3) the decedent's smoking history made him "an elevated smoking related lung cancer risk." Cherniack repeatedly pointed out the synergistic effect of cigarette smoking and asbestos exposure in producing lung cancer, and concluded that it was "more likely than not that both tobacco smoke and exposures to asbestos at the Electric Boat Shipyard each contributed to the development of [the decedent's] lung cancer."

In defending against this claim, Electric Boat offered the January, 1995 report and the February, 1995 deposition testimony of Bernard L. Gee, a professor of medicine in the pulmonary and critical care section of the department of internal medicine at Yale University School of Medicine. After reviewing the decedent's medical records and pertinent epidemiologic studies, Gee opined that: (1) the decedent had died of lung cancer, which was caused by his smoking history; and (2) it was not medically probable that the decedent's

asbestos exposure caused the lung cancer. Electric Boat also offered the April, 1995 testimony of Joseph Turco, a supervisor of the decedent at Electric Boat, in an effort to show that the decedent had not been exposed to asbestos at the shipyard for the length of time reported by Cherniack.

With respect to the evidence presented, the administrative judge expressly stated that "this case presents the classic battle of the medical experts, [Deren] and [Cherniack] for [the plaintiff] and [Gee] for the [defendants]. Initially, I note that *the evidence is not in equipoise,* as posited by [Electric Boat], and I reject the thesis that the claim should be denied as the 'true doubt' rule has been rejected by the [United States] Supreme Court . . . ." (Emphasis added.) The administrative judge expressly stated that he placed great weight on the history reports given to Deren, particularly where the reports were given for purposes of treatment and were given well before the filing of any claim for benefits. The administrative judge also stated that he rejected, as vague and speculative, the testimony of Turco, which was offered by Electric Boat to show that the decedent had not been exposed to asbestos at the shipyard. The administrative judge further stated that he "accept[ed] the well-reasoned and well-documented opinion of [Cherniack] and [could not] accept the opinion of [Gee] as the doctor does not consider the well-known medical concept of the synergistic effect of cigarette smoking and asbestos exposure in producing a greater risk for contracting lung cancer." Accordingly, the administrative judge concluded that the decedent's lung cancer constituted a work-related injury that resulted from the synergistic effect of the decedent's exposure to asbestos at the Electric Boat shipyard and his longtime smoking history.

A thorough review of the administrative judge's decision makes it clear that he fully considered and deter-

mined, adversely to Electric Boat, the issue of whether the decedent's condition was caused by his employment at Electric Boat. Moreover, a thorough review of the briefs filed in the federal action, as well as the transcripts of the proceedings, reveals that the issue of whether the decedent's injury was causally related to his employment at Electric Boat was fully and fairly litigated. This is the same issue that Electric Boat attempts to litigate in the state workers' compensation proceeding. Collateral estoppel bars Electric Boat from doing so.

Before we address the specific arguments advanced by Electric Boat, some background of the so-called "true doubt" rule is helpful to our resolution of the present case. For more than fifty years, in adjudicating benefits claims under the Longshore Act, the United States Department of Labor had applied what it called the true doubt rule. *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, supra, 512 U.S. 269; see also id., 281 (Souter, J., dissenting). The true doubt rule "essentially shifts the burden of persuasion to the party opposing the benefits claim—when the evidence is evenly balanced, the benefits claimant wins." Id., 269. The United States Supreme Court abolished, however, the true doubt rule in *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, supra, 281, concluding that the rule was contrary to § 7 (c) of the federal Administrative Procedure Act; 5 U.S.C. § 556 (d); which requires that "when the evidence is evenly balanced, the benefits claimant must lose." *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, supra, 281.

Electric Boat argues that collateral estoppel should not apply because of the application by the administrative judge of the § 20 (a) presumption, which, according to Electric Boat, provided the plaintiff with a statutory

benefit of the doubt that does not exist under our workers' compensation laws.[9] The subparts to this claim are that: (1) the application by the administrative judge of the § 20 (a) presumption resulted in a lighter burden of proof on the plaintiff in the federal action than would obtain in the state proceeding; and (2) because of that application, it is not possible to discern whether the issue of causation was actually litigated and necessarily determined. We are not persuaded. We conclude that, although the statements in the administrative judge's decision to which Electric Boat refers were references to the abolished true doubt rule, and although those phrases were misstatements of the law, they were merely repeated as rote, boilerplate language by the administrative judge, and did not affect his analysis and ultimate conclusion to award death benefits to the plaintiff.

Although the administrative judge used the disputed language improperly, and cited cases decided prior to *Greenwich Collieries* as authority for the language; see, e.g., *Durrah* v. *Washington Metropolitan Area Transit Authority*, 760 F.2d 322 (D.C. Cir. 1985); he did not actually apply the true doubt rule. Instead, as stated previously, the administrative judge expressly found that the evidence was *not* in equipoise, and analyzed and weighed the competing medical opinions offered by Deren, Cherniack and Gee. Furthermore, he expressly stated that he accepted the opinions of Deren and Cherniack, which weighed in favor of a finding of causation, and that he did not accept the opinion of Gee, because Gee did not consider the synergistic effect of cigarette smoking and asbestos exposure. It is therefore clear

---

[9] Specifically, Electric Boat refers to the following language in the administrative judge's decision: "[T]he presumption on that issue falls out of the case, does not control the result and I shall now weigh and evaluate all of the evidence, *resolving all doubts, as I must, in [the plaintiff's] favor.*" (Emphasis added.)

that the administrative judge did not apply the true doubt rule, which has been abolished.[10]

Even if we were to assume that the language in the administrative judge's decision concerning resolving any doubts in favor of the plaintiff; see footnote 9 of this opinion; referred to a statutory benefit of the doubt principle, as Electric Boat suggests, as opposed to the true doubt rule, we are unpersuaded by Electric Boat's arguments. First, Electric Boat points to neither any statutory language nor any case law, nor are we aware of any, to support its proposition that the § 20 (a) presumption requires a judge to find in favor of the claimant when a doubt exists with respect to the evidence. Second, these arguments ignore the procedural context in which the § 20 (a) presumption played a role. As discussed previously, under the Longshore Act, the § 20 (a) presumption is invoked when a claimant has made a prima facie case that an injury was suffered and that the injury could have been caused by a condition that existed in the workplace. Upon such a showing, the employer is then afforded the opportunity to rebut the presumption by presenting substantial evidence that the injury was not work-related. In the context of this statutory framework, as expressly acknowledged by the administrative judge, Electric Boat successfully rebutted the § 20 (a) presumption, causing it to drop out of the case entirely. The administrative judge thereafter weighed all of the evidence in the record. Thus, the § 20 (a) presumption did not play a role in his final analysis of the evidence. Third, as discussed previously, the administrative judge had no doubts with respect to the evidence presented.

Specifically, therefore, with respect to Electric Boat's first argument, we conclude that, in the federal action,

[10] In this connection, we note that Electric Boat expressly conceded, at oral argument before this court, that the administrative judge did not apply the true doubt rule.

the administrative judge imposed on the plaintiff the burden to prove, by a preponderance of the evidence, that the decedent's injury arose out of and occurred in the course of his employment at Electric Boat, and that the administrative judge in fact required that this burden be satisfied without the aid of any presumption. This is the same burden that would obtain in the state workers' compensation proceeding.[11] With respect to Electric Boat's second argument, it is unnecessary to repeat our discussion here concerning whether the issue of causation was actually litigated and necessarily determined in the federal action.

At oral argument before this court, Electric Boat argued for the first time that collateral estoppel should not apply because the administrative judge applied a more relaxed standard of causation than is applicable under the act. Specifically, Electric Boat argued that the administrative judge applied a standard whereby the employment-related injury had to be a *contributing* factor as opposed to a *substantial contributing* factor standard, which, according to Electric Boat, would apply in the state proceeding. Because this issue was neither timely raised nor properly briefed, we decline to review it. See *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 166 n.20, 714 A.2d 664 (1998); *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 486 n.7, 697 A.2d 680 (1997).

---

[11] "It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed arose out of the employment and *occurred in the course of the employment*. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident. . . . *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792–93, 694 A.2d 1230 (1997). . . . *Kish* v. *Nursing & Home Care, Inc.*, [248 Conn. 379, 382–83, 727 A.2d 1253 (1999)]." (Emphasis in original; internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 266, 746 A.2d 743 (2000).

The decision of the review board is reversed and the case is remanded to the review board with direction to reverse the decision of the commissioner dismissing the claim of collateral estoppel, and to remand the case to the commissioner for further proceedings according to law.

In this opinion the other justices concurred.