### Joel OMOTOSHO, Plaintiff,

### v.

### FREEMAN INVESTMENT & LOAN, Mortgage Electronic Registration Systems, Inc. (MERS), Intercontinental Capital Group, Inc., CitiMortgage, Inc., and Hunt Leibert Jacobson, P.C. Defendants.

### Civil No. 3:15–cv–622(AWT)

United States District Court, D. Connecticut.

Signed March 9, 2016

5. This case was removed from state court on the basis of federal question jurisdiction.

Joel Omotosho, Bridgeport, CT, pro se.

Donald E. Frechette, Tara Lynn Trifon, Locke Lord LLP, Geoffrey K. Milne, Hunt Leibert Chester & Jacobson, Hartford, CT, for Defendants.

### RULING ON MOTIONS TO DISMISS AND MOTION FOR LEAVE TO AMEND

Alvin W. Thompson, United States District Judge

■ The *pro se* plaintiff brings this action seeking damages and seeking to void, vacate, and set aside a foreclosure judgment rendered in Connecticut Superior Court and to be granted free and clear title to the property that was the subject of the foreclosure proceeding.

Defendants CitiMortgage, Inc. ("CitiMortgage"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Hunt Leibert Jacobson, P.C. ("Hunt Leibert") have moved to dismiss the complaint in its entirety pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6), and the plaintiff has moved for leave to amend the complaint. The motions to dismiss are being granted, and the motion for leave to amend the complaint is being denied.[1]

### I. FACTUAL ALLEGATIONS

On August 14, 2007 the plaintiff executed an Open–End Mortgage in favor of

---

1. Defendants Intercontinental Capital Group, Inc. ("Intercontinental") and defendant Freeman Investment & Loan have not appeared in this case. The plaintiff refers to Freeman Investment & Loan as "Freemont Investment & Loan" in the body of the complaint, although it appears that its actual name is "Freemont." The court will refer to this party as "Freemont."

Intercontinental. MERS was named as nominee for Intercontinental, and its successors and assigns. On February 19, 2010 MERS assigned the mortgage to Citi-Mortgage.

On February 9, 2010, CitiMortgage initiated foreclosure proceedings. Hunt Leibert represented CitiMortgage. On November 24, 2014, the Connecticut Superior Court entered a final judgment of foreclosure. On January 20, 2015, the Connecticut Superior Court denied the plaintiff's motion to open the judgment. The plaintiff's law day ran on April 21, 2015.

During the course of the foreclosure proceedings, on April 22, 2014, the plaintiff declared bankruptcy under Chapter 13 of the Bankruptcy Code. *See In re Omotosho*, 14–bk–50590, Doc. No. 1 (Bank.D.Conn). His Schedule B listing of personal property did not contain any reference to the claims pled in the instant lawsuit. On August 21, 2014, the plaintiff's bankruptcy case was converted to a Chapter 7 "no asset" case. On January 22, 2015, the plaintiff was granted a discharge under section 727 of the Bankruptcy Code, 11 U.S.C. § 727.

The plaintiff filed the this action on April 28, 2015. In Count I, the plaintiff alleges that the defendants, acting "under Color of Law[,]" deprived him of his "Bundle of Rights" for his property by "unjustly" foreclosing on his house. (Verified Complaint ("Complaint") at ¶¶ 53, 54.) In Count II, the plaintiff alleges that the defendants "conspired to intercept, co-opt or invalidate the integrity and solvency of Plaintiff's Mortgage (Title) and Promissory Note at the inception of the purchasing agreement through fraudulent conversion of said security instruments without lawful justification." (*Id.* at ¶ 55.) He alleges that Freemont "unconscionably bifurcated Plaintiff's Mortgage from the Promissory Note by assigning MERS as 'nominee' to be the Mortgage of his Security Agree-ment with [Freemont]," (*Id.* at ¶ 10), and that Freemont, "and its Agents and Assignees intended to securitize his security instruments on Wall Street in Mortgage Backed Securities schemes to profit off his debt obligations." (*Id.* at ¶ 33.) Thus, he alleges, the assignment of the Mortgage was "unconscionable" and a "conspiratorial act perpetrated by the Defendant(s) for the illicit purpose of unjustly enriching their investment interests at Plaintiff's expense." (*Id.* at ¶ 57.) In Count III, the plaintiff alleges that the defendants had a duty to "prevent the violation of Plaintiff's Rights" and that Hunt Leibert was "bound" to "prevent the injury or violation of Plaintiff's constitutionally protected Rights in the interest of justice and the implied covenant of Good Faith and Fair Dealing." (*Id.* at ¶¶ 60, 61.) In Count IV, the plaintiff alleges that Hunt Leibert "knew or should have reasonably known that the foreclosure action initiated by them against Plaintiff was a misuse or misapplication of process" and that the defendants "abused the foreclosure process . . . because they had an ulterior motive to benefit from a fraudulent financial obligation of which they never intended or expected Plaintiff to achieve." (*Id.* at ¶¶ 64, 65). In Count V, the plaintiff alleges that "failing to disclose the true nature of the Mortgage Loan Agreement, the separation of the Note from the Mortgage at its inception, and avoiding or omitting evidence from the Court in the foreclosure action, is in effect an obstruction of justice and denial of due process." (*Id.* at ¶ 66.) In Count VI, the plaintiff alleges that the defendants "conspired to deprive Plaintiff of constitutionally protected Rights under Color of Law through the initiation and implementation of a fraudulent foreclosure proceeding." (*Id.* at ¶ 71.) In Count VII, the plaintiff alleges that "[Freemont] and MERS committed fraud in the factum in the Mortgage Agreement and purchase transaction of the Mortgage Agreement

respectively," and that they "did not disclose or get consent from Plaintiff in the securitization of his Note and Mortgage." (*Id.* at ¶¶ 73, 75.) The plaintiff also alleges that Intercontinental and Hunt Leibert "committed fraud by initiating the foreclosure action." (*Id.* at ¶ 77.) In Count VIII, the plaintiff alleges that Intercontinental and Hunt Leibert also perpetrated fraud upon the court by initiating the alleged "fraudulent foreclosure action." (*Id.* at ¶ 78.) Finally, in Count IX, the plaintiff alleges that Intercontinental and Hunt Leibert committed mail fraud by "using the mail to instigate their intention to defraud Plaintiff out of his property interests under Color of Law." (*Id.* at ¶ 83.)

## II. LEGAL STANDARD

"[T]he standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." *Moore v. Paine-Webber Inc.*, 189 F.3d 165, 169 n. 3 (2d Cir.1999). When deciding a motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting

*Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1960. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683).

When considering a motion to dismiss, the district court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993). The court may take judicial notice of public records. *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir.2002). "[D]ocket sheets are public records of which the court [may] take judicial notice." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006).

## III. DISCUSSION

### A. Jurisdictional Issues

#### 1. Claims Owned by Bankruptcy Estate

Defendants CitiMortgage and MERS argue that Counts II, IV, V, VII,

and VIII are owned by the plaintiff's bankruptcy estate and, therefore, the plaintiff lacks standing to bring them.[2] Commencement of a bankruptcy proceeding creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The debtor must file a schedule of assets and liabilities with the Bankruptcy Court. *See* 11 U.S.C. § 521(a)(1)(B)(i). The debtor's equitable interests "include causes of action possessed by the debtor at the time of filing." *In re Jackson*, 593 F.3d 171, 176 (2d Cir. 2010). "[B]ecause an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claim after emerging from bankruptcy." *Rosenshein v. Kleban*, 918 F.Supp. 98, 103 (S.D.N.Y.1996).

In order to determine whether a debtor had a property interest in a cause of action at the time he filed for bankruptcy, we look to state law. In Connecticut, a cause of action accrues when a plaintiff suffers actionable harm. The fact that this accrual date may be different than the date on which the statute of limitations begins to run is irrelevant. *Calabrese v. McHugh*, 170 F.Supp.2d 243, 257 (D.Conn.2001) (citations omitted).

The defendants argue that the claims in Counts II, IV, V, VII, and VIII accrued prior to the bankruptcy filing and were not scheduled and, they are, therefore, assets of the plaintiff's bankruptcy estate and may not be asserted by the plaintiff. The plaintiff filed for bankruptcy on April 22, 2014. Thus, all unscheduled claims in the Complaint that accrued prior to April 22, 2014 are part of the bankruptcy estate and

may not be asserted by the plaintiff. The court concludes that Counts II, IV, and VII are owned by the bankruptcy estate, so the plaintiff lacks standing to bring these claims.

*Count II*

■ Count II alleges conspiracy and fraud at "inception of the purchasing agreement" and at the assignment of MERS as "nominee" of the mortgage. (Complaint at ¶¶ 55, 57.) Because the execution of the purchasing agreement and the assignment of MERS took place in August 2007 and there were no such claims contained in the plaintiff's Schedule B, claims challenging the execution of the agreement and the assignment of the mortgage are owned by the bankruptcy estate. Thus, the plaintiff does not have standing to bring Count II, and this count is being dismissed.

*Count IV*

■ Count IV challenges the initiation of the foreclosure action on February 9, 2010. Because the foreclosure action was initiated prior to April 22, 2014 and the claim is unscheduled, it is also owned by the bankruptcy estate. While it is true that the foreclosure action did not conclude until after the bankruptcy proceedings commenced, a cause of action accrues when the plaintiff suffers "actionable harm." *Calabrese*, 170 F.Supp.2d at 257. In *In Re Residential Capital, LLC*, the court considered a plaintiff who, like the plaintiff in this case, initiated bankruptcy proceedings while defending against a foreclosure. 2015 WL 588359 (Bankr. S.D.N.Y Feb. 11, 2015). In *Residential Capital*, the court found that the plaintiff's

2. Defendant Hunt Leibert does not specify which claims are owned by the bankruptcy estate but argues that the plaintiff may not raise any claims that accrued before the commencement of the bankruptcy proceeding and were not included in the plaintiff's Schedule B. (Motion to Dismiss by Hunt Leibert Jacobson, P.C. ("Hunt Leibert Motion to Dismiss"), Doc. No. 28, at 9-10.)

wrongful foreclosure claim was part of her bankruptcy estate, even though the foreclosure proceedings had not concluded when she filed for bankruptcy, because she had "sufficient knowledge of the facts underlying any claim relating to the ... Foreclosure Action at the time she filed her schedules." *Id.* at *8. Similarly, in this case the plaintiff had sufficient knowledge of facts related to initiation of the foreclosure proceeding at the time he filed for bankruptcy. Because the plaintiff failed to include this claim on his Schedule B, it is owned by the bankruptcy estate. Accordingly, Count IV is being dismissed.

### Count V

Count V alleges that the defendants "fail[ed] to disclose the true nature of the Mortgage Loan Agreement, the separation of the Note from the Mortgage at its inception, and avoid[ed] or omit[ted] evidence from the Court in the foreclosure action." (Complaint at ¶ 66.) The defendants argue that this claim is also owned by the bankruptcy estate because it relates to the "inception" of the Mortgage Loan Agreement. While this is true, and claims related to the "inception" of the Mortgage Loan Agreement would be owned by the bankruptcy estate, Count V also contains allegations related to evidence "avoid[ed] or omit[ted]" during the foreclosure action. Because the foreclosure action did not conclude until November 24, 2014, the court cannot conclude that this cause of action, as it relates to evidence avoided or omitted during the course of the foreclosure action, accrued prior to the filing of the bankruptcy petition. Thus, this claim is not necessarily property of the bankruptcy estate. However, Count V is being dismissed as barred by the *Rooker–Feldman* doctrine.

### Count VII

Count VII alleges that defendants Freemont and MERS "did not disclose the true nature of the loan Agreement" and that "the assignment of Plaintiff's Title to MERS was not only unconscionable, but an act which effectively breached the Agreement through bifurcation of the Note from the Mortgage thereby making the Agreement null and void." (Complaint at ¶ 74.) He also alleges that Freemont and MERS failed to "disclose or get consent from Plaintiff in the securitization of his Note and Mortgage." (*Id.* at ¶ 75.) He further alleges that defendants Intercontinental and Hunt Leibert committed fraud by initiating the foreclosure action against the plaintiff when they knew or reasonably should have known that they lacked standing "because the validity and integrity of the Chain of Title was breached at the inception of the Mortgage Agreement." (*Id.* at ¶ 77.) Because any claims arising out of the commencement of the foreclosure action and/or events occurring prior to that point in time accrued before the filing of the bankruptcy petition, they are property of the bankruptcy estate. Therefore, Count VII is being dismissed.

### Count VIII

Count VIII alleges that Intercontinental and Hunt Leibert "perpetrated fraud upon the Court in the initiation and pursuit of a fraudulent foreclosure action against the plaintiff." (Complaint at ¶ 78.) The plaintiff further alleges that Intercontinental and Hunt Leibert "knew or reasonably should have known that documents and claims they purportedly made in the foreclosure action ... [were] fraud because the Mortgage and Note [were] bifurcated and the Agreement was void." (*Id.* at ¶ 79.) Because this claim relates not only to the initiation of the foreclosure proceeding, but also to the "documents and claims they purportedly made in the foreclosure action," it is not necessarily owned by the bankruptcy estate.

However, Count VIII is being dismissed on other grounds. As against Hunt Leibert, this count is being dismissed because the litigation privilege protects attorneys from fraud allegations. *See Simms v. Seaman*, 308 Conn. 523, 545, 69 A.3d 880 (2013). ("attorneys are shielded by the litigation privilege from claims of fraud."). This claim is also barred by the *Rooker–Feldman* doctrine.

### 2. The *Rooker–Feldman* Doctrine

*Rooker–Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

*McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir.2010). The Second Circuit has held that a claim that a foreclosure judgment was obtained fraudulently is barred by the *Rooker–Feldman* doctrine. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir.2014). In *Vossbrinck* the plaintiff alleged that the

> Defendants engaged in fraud during the foreclosure action by (1) misrepresenting that they had standing to seek foreclosure, when in fact [the defendant] was not the holder of [the plaintiff's] note and mortgage when the foreclosure action was initiated, and Deutsche Bank lacked standing to enter as substitute plaintiff; and (2) submitting fraudulent title documents in the state action.

*Id.* The court found that the *Rooker–Feldman* doctrine barred such claims holding that

> [the plaintiff] is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their represen-

tations to the court, lacked standing to foreclose. This would require the federal court to review the state proceeding and determine that the foreclosure judgment was issued in error. And the injury of which Vossbrinck "complains" in this claim for relief, and which he seeks to have remedied, is the state foreclosure judgment. This is evident from the relief Vossbrinck requests—title to and tender of his property and, in his brief on appeal, to have the state judgment declared "void." ... *Rooker–Feldman* bars such claims[.]

*Id.*

■■■■ Defendants CitiMortgage and Hunt Leibert argue that the *Rooker–Feldman* doctrine bars the plaintiff's claims. Defendant MERS does not argue that the *Rooker–Feldman* doctrine bars the plaintiff's claims against it because MERS was not a party to the state court proceeding. (*See* Mortgage Electronic Registration Systems, Inc.'s Renewed Motion to Dismiss ("MERS Motion to Dismiss"), Doc. No. 23, at 9 n.7.) However, MERS is not precluded from invoking the Rooker–Feldman doctrine. "While the Supreme Court has held that *Rooker–Feldman* may not be asserted *against* a non-party to the underlying state-court proceeding, *see Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (per curiam)(emphasis added), the Court has not held that there must be complete identity of plaintiffs or parties in the two proceedings." *Bush v. Danziger*, No. 6–cv–5529, 2006 WL 3019572, at *4 (S.D.N.Y. Oct. 23, 2006). In other words, *Rooker–Feldman* requires the federal court plaintiff to have been a party to the state court proceedings, but it does not require the federal court defendants to have been party to the state court proceedings. Therefore, MERS may invoke the Rooker–Feldman doctrine as a bar to the plaintiff's claims

against it. Since the *Rooker–Feldman* doctrine implicates subject-matter jurisdiction, *see Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the court may, and indeed must, raise it *sua sponte*, pursuant to Fed.R.Civ.P. 12(h)(3). Accordingly, the court considers the application of the *Rooker–Feldman* doctrine to claims brought against all three defendants. The court finds that the *Rooker–Feldman* doctrine bars all but one of the plaintiff's claims that are not part of the bankruptcy estate.

The first and fourth *Rooker–Feldman* requirements are met as to all those claims. The plaintiff lost in state court, and the state court judgment was entered before he commenced this suit in federal court. The second and third *Rooker–Feldman* requirements are also met for the claims in Counts I, III, V, VI and VIII.

■ In Count I, the plaintiff alleges that the defendants deprived him of his property rights under color of state law by "unjustly foreclos[ing] upon" his property. (Complaint at ¶ 54.) He alleges they deprived him of "the Right of Possession of his property; the Right to the Control of his property; the Right of the Enjoyment of his property; the Right of Exclusion and Privacy of his property; and the Right of Disposition of his property." (*Id.* at ¶ 54.) Because his injury is a product of the judgment in the foreclosure action and vindication of this claim would require this court to review the state court judgment, the second and third requirements are met and Count I is barred by the *Rooker–Feldman* doctrine. Similarly, the plaintiff alleges in Count III that the defendants "violated his constitutionally protected Rights by refusing or neglecting to prevent the deprivation of his Rights under Color of Law." (*Id.* at ¶ 59.) Even if this were a cognizable claim, it would be barred by the *Rooker–Feldman* doctrine because the only constitutionally protected rights alleged are those referred to in Count I. Thus, the analysis for Count III with respect to the second and third *Rooker–Feldman* requirements is the same as for Count I.

■ Count V (alleging that the defendants obstructed justice and denied the plaintiff due process by concealing evidence from the court in the foreclosure action and that the alleged conduct is "integral to the injury and damages" he has sustained (Complaint ¶ 69)) and Count VI (alleging that a fraudulent foreclosure proceeding culminated in an adverse judgment against the plaintiff) are barred by the *Rooker–Feldman* doctrine. The second and third requirements are met with respect to both counts because the injury complained of was caused by the judgment in the foreclosure action and determining whether the plaintiff is entitled to the relief he seeks would require review of the state court judgment. Therefore, these claims are also barred.

■ Count VIII alleges that Hunt Leibert and Intercontinental "perpetrated fraud upon the court in the initiation and pursuit of a fraudulent foreclosure action against Plaintiff." (Complaint at ¶ 78.) The plaintiff then alleges that the state court "judgment is void, and should be vacated or set aside." (*Id.* ¶ 80.) This is precisely the type of case the *Rooker–Feldman* doctrine bars. The second and third requirements are met because the plaintiff explicitly complains of the injury caused by the state court judgment, and in order to provide the plaintiff with the remedy he seeks, this court would have to "review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck*, 773 F.3d at 427. Thus, Count VIII is barred.

## B. Res Judicata

The defendants argue that the plaintiff's claims are barred by both res judicata and collateral estoppel.[3]

Under *claim preclusion*, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (internal quotation mark omitted). The doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not. *See St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir.2000). The doctrine of *issue preclusion*, in contrast, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S.Ct. 2161 (internal quotation marks omitted).

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107–08 (2d Cir.2015) (emphasis in original).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir.2009) (alteration in original) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

## 1. Claim preclusion

Under Connecticut law, "[A] former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. Claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made." *O'Connor*, 568 F.3d at 69 (alteration in original) (quoting *Joe's Pizza, Inc. v. Aetna Life and Cas. Co.*, 236 Conn. 863, 871–72, 675 A.2d 441 (1996)). "The doctrine of res judicata applies as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Id.* (quoting *Joe's Pizza*, 236 Conn. at 872, 675 A.2d 441).

"Connecticut has adopted a transactional test for determining whether an action involves the same claim as a prior action such that res judicata applies. *Weiss v. Weiss*, 297 Conn. 446, 461, 998 A.2d 766 (Conn.2010). "The transactional test measures the preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *Legassey v. Shulansky*, 28 Conn.App. 653, 656, 611 A.2d 930 (1992).

*Saunders v. Principal Residential Mortg., Inc.*, 2012 WL 4321974, at *5 (D.Conn. Sept. 20, 2012). "[U]nder Connecticut law, a defendant in a foreclosure proceeding can only raise defenses relating to the making, validity and enforceability of the mortgage." *Packer v. SN Servicing Corp.*, 2008 WL 359411, at *3 (D.Conn.2008) (citing *Fidelity Bank v. Krenisky*, 72 Conn. App. 700, 705–06, 807 A.2d 968 (2002)).

---

3. Although "res judicata" can encompass both claim and issue preclusion, *see Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir.2015), the court understands the defendants' use of "res judicata" to mean "claim preclusion" and "collateral estoppel" to mean "issue preclusion."

■ Here, even if claims against Citi-Mortgage in Counts I through VI and MERS in Counts I through VII were not otherwise barred, they would be barred by res judicata. First, the foreclosure was litigated to a final judgment in state court. Second, CitiMortgage and the plaintiff were parties to the action, and MERS is in privity with CitiMortgage because assignors are in privity with assignees. *See Taylor*, 553 U.S. at 894, 128 S.Ct. 2161 (2008) ("nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." (citation omitted)). Finally, all of the plaintiff's claims could have been raised in the state court proceeding as they implicate either the validity of the loan documents or enforcement of them in the foreclosure action. Therefore, res judicata bars the plaintiff's claims against CitiMortgage and MERS.

■ However, res judicata does not bar the plaintiff's claims against Hunt Leibert because Hunt Leibert is not in privity with CitiMortgage simply by virtue of representing CitiMortgage in the foreclosure proceeding.

## 2. Issue Preclusion

■ Under Connecticut law,

[A]n issue is subject to collateral estoppel when it satisfies the following elements: 1) it was fully and fairly litigated in the first action; 2) it was actually decided; and 3) the decision was necessary to the judgment. An issue has been fully and fairly litigated if the party against whom collateral estoppel is asserted had a "full and fair opportunity" to litigate that issue in the first

action. "An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.... An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Lafayette v. General Dynamics Corp.*, 255 Conn. 762, 770 A.2d 1, 8–9 (2001) (emphasis in original) (internal citation and quotations omitted).

*Rodrigues v. J.P. Morgan Chase Bank*, No. 3:08–CV–01417 PCD, 2011 WL 2491121, at *3 (D.Conn. June 22, 2011) (emphasis in original) (citations omitted). Under Connecticut law, nonmutual issue preclusion is permitted. *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 300, 596 A.2d 414 (1991); *see also Rivera v. Doe*, No. 9–cv–7, 2011 WL 2222306, at *5 (D.Conn. June 7, 2011).

■ CitiMortgage argues that the plaintiff's claims are barred by issue preclusion because he is "unabashedly trying to relitigate the underlying foreclosure" by challenging 1) CitiMortgage's standing, 2) the propriety of the alleged "splitting" of the note and mortgage, and 3) the validity of CitiMortgage's use of the foreclosure process. (CitiMortgage, Inc.'s Renewed Motion to Dismiss (Doc. No. 21) at 16.) CitiMortgage argues that a finding in its favor on each of these issues was a necessary predicate to the state court judgment and, thus, the plaintiff is precluded from raising these issues now. MERS similarly argues that the plaintiff's claims are barred by issue preclusion because, as to MERS, the plaintiff is seeking to challenge 1) "the propriety of the supposed 'splitting' the *Note* and the *Mortgage*," and 2) "MERS' presence in the chain of title and its authority to act as mortgagee and nominee." (MERS Motion to Dismiss at 11.) MERS argues that in order to have found for CitiMortgage in the foreclosure action,

the court would have had to find that it was not unlawful to "bifurcate" the Note and Mortgage and that MERS was a valid mortgagee and nominee. Hunt Leibert alleges that the plaintiff's claims are barred by collateral estoppel because here, the plaintiff "is trying to relitigate the underlying foreclosure[ ] and to unravel the vesting of title." (Hunt Leibert Motion to Dismiss at 11.)

The Complaint does not allege, nor do any documents of which the court may take judicial notice show, that the issues raised now by the plaintiff were "actually litigated" in the state court foreclosure proceeding. As noted above, an issue is actually litigated if it "is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Rodrigues,* 2011 WL 2491121, at *3. Items properly in the record at the motion to dismiss stage do not reflect whether the plaintiff actually raised these issues in the foreclosure action. Thus, although the plaintiff would have had the opportunity to fully and fairly litigate these issues in the foreclosure action and, had he done so, the state court's decisions on them would have been necessary to the judgment, it is not contended that the issues now before this court were, in fact, actually litigated. Therefore, the plaintiff's claims are not barred by issue preclusion.

## C. Failure to State a Claim

Even if Counts I, III, V, or VI were not barred either by the *Rooker–Feldman* doctrine or on grounds of res judicata, the plaintiff fails to allege sufficient facts to state a claim upon which relief can be granted for any of these counts. Count IX should also be dismissed on this basis.

### Count I

Count I is a claim pursuant to 42 U.S.C. § 1983 alleging deprivation of rights under color of state law. "To establish individual liability in a § 1983 action, a plaintiff must 'show that [an] official, acting under color of state law, caused the deprivation of a federal right.'" *Coon v. Town of Springfield,* 404 F.3d 683, 686 (2d Cir.2005) (alteration in original) (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). "An official 'acts under color of state law' for Section 1983 purposes when the official exercises a power 'possessed by virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law.'" *Colombo v. O'Connell,* 310 F.3d 115, 116 (2d Cir.2002) (quoting *Monsky v. Moraghan,* 127 F.3d 243, 245 (2d Cir.1997)). The plaintiff has failed to allege facts that could establish that any defendant is a state actor or acted under color of state law.

### Count III

Count III alleges that the defendants "knew or should have reasonably known that they were duty bound to prevent the violation of the Plaintiff's Rights." (Complaint at ¶ 60.) However, the plaintiff fails to allege a legally cognizable basis for such a duty. With respect to Hunt Leibert, the plaintiff alleges that as "officers of the court" the attorneys were "bound by oath ... to prevent the injury or violation of Plaintiff's constitutionally protected Rights in the interest of justice and the implied covenant of Good Faith and Fair Dealing" (*Id.* at ¶ 61.) That is not a legally cognizable basis for such a duty. To the extent the plaintiff is alleging that Hunt Leibert violated some duty to the plaintiff by litigating the foreclosure action, Hunt Leibert is protected by the litigation privilege because the plaintiff does not "point to specific misconduct intended to cause specific injury outside the course of normal contemplation of private litigation." *Simms,* 308 Conn. at 541, 69 A.3d 880 (internal quotation marks omit-

ted) (quoting *Mozzochi v. Beck*, 204 Conn. 490, 492, 529 A.2d 171 (1987)). Hunt Leibert is also protected by the litigation privilege to the extent the plaintiff is asserting a fraud claim against defendant Hunt Leibert. *See id.* at 545, 69 A.3d 880.

### Count V

 Count V alleges that the defendants violated 18 U.S.C. §§ 241 and 242. However, neither 18 U.S.C. § 241 nor § 242 provides a private right of action. *See Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir.2009). Additionally, to the extent that Count V alleges a violation of due process (*see* Complaint at ¶ 66 ("failing to disclose the true nature of the Mortgage Loan Agreement, the separation of the Note from the Mortgage at its inception, and avoiding or omitting evidence from the Court in the foreclosure action, is in effect an obstruction of justice and a denial of due process")), the claim does not allege sufficient facts to state a claim upon which relief can be granted because the plaintiff does not allege what "evidence" the defendants failed to disclose.

### Count VI

 Count VI is barred by the statute of limitations. Count VI alleges that the defendants violated 42 U.S.C. §§ 1985 and 1986 through "initiation and implementation of a fraudulent foreclosure proceeding that culminated in an adverse judgment against Plaintiff." (Complaint at ¶ 71.) A § 1985 claim accrues "once the plaintiff knows or has reason to know of the injury which is the basis of his action." *See Lilly v. Town of Lewiston*, 582 Fed. Appx. 55 (2d Cir.2014) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994). The statute of limitations for a § 1985 is three years. *Id.* (citing *Cornwell*, 23 F.3d at 703). Because the foreclosure action, which is the basis for Count VI, was com-

menced in 2010, the statute of limitations has run and the plaintiff's § 1985 claim is time-barred. A § 1986 claim has a one year statute of limitations. *See* 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued"). Accordingly, the plaintiff's § 1986 claim is also time-barred.

### Count IX

 Count IX alleges that the defendant Intercontinental and Hunt Leibert committed the "federal offense" of mail fraud. However, there is no private cause of action for the federal offense of mail fraud. *See Pharr v. Evergreen Garden, Inc.*, 123 Fed.Appx. 420, 422 (2d Cir.2005). Accordingly, Count IX fails to state a claim upon which relief can be granted.

### D. Motion for Leave to Amend

The plaintiff has moved for leave to amend his Complaint in order to "more specifically clarify [his] constitutional claims and the nature and description of the fraud perpetrated by Defendant(s), and each of them, in detail with particularity to better qualify the fact that [he has] a claim for which relief should be granted." (Motion for Leave to File an Amended Complaint (Doc. No. 33) at 1.)

In his proposed amended complaint, the plaintiff supplements this Complaint with additional factual and legal background and eliminates the original Count VI alleging conspiracy. He also re-alleges the original Count II (conspiracy to commit intentional interference of person and property through fraudulent conversion of plaintiff's chattel paper, brought pursuant to 42 U.S.C. §§ 1983 and 1985) as two separate counts: conspiracy to commit fraud and intentional interference of person pursuant to 42 U.S.C. §§ 1983 and

1985 (Proposed Count II) and lack of standing/wrongful foreclosure and fraudulent conversion of plaintiff's chattel paper (Proposed Count III). Similarly, he reasserts his original Count VII (fraud) as two separate counts: fraudulent concealment (Proposed Count IV) and fraud in the inducement (Proposed Count V).

▮ The defendants each object to the motion for leave to amend on the grounds that amendment would be futile. The court agrees.

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.,* 470 F.3d 481, 491 (2d Cir.2006). *Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir.2014). Even construing the plaintiff's proposed amended complaint liberally, as the court must do, the court finds that the plaintiff either seeks to assert a claim that is owned by the bankruptcy estate or fails to state a claim upon which relief can be granted.

## 1. Proposed Count II

Proposed Count II alleges that the defendants "conspired to intercept, co-opt or invalidate the integrity and solvency of Plaintiff's Mortgage (Title) and Promissory Note at the inception of the purchasing agreement through fraudulent conversion of said security instruments without lawful justification, and deprive him of the use and possession thereof for their unjust enrichment." (First Amended Complaint, Doc. No. 33–1 ("Proposed Amended Complaint") at ¶ 77.) He alleges that the defendants "knew or should have reasonably known that their acts of conspiracy and ... collusion to omit, avoid, or falsify the disclosure of documents and information required by law to be submitted were in violation of 42 U.S.C. §§ 1985 & 1986." (Proposed Amended Complaint at ¶ 81.) As discussed above, the plaintiff's § 1985 and § 1986 claims are barred by the respective statutes of limitation. Therefore, the plaintiff's Proposed Count II would be time-barred.

## 2. Proposed Count III

Proposed Count III alleges that the defendants lacked standing to bring the foreclosure action because they did not have "any tenable and irrefutable security interest in Plaintiff's property." (Proposed Amended Complaint at ¶ 82.) This claim would be owned by the bankruptcy estate because it occurred prior to the filing of the bankruptcy petition.

## 3. Proposed Counts IV and V

Proposed Count IV alleges that the defendants "concealed material facts that the Plaintiff's Mortgage and Promissory Note [were] securitized." (Proposed Amended Complaint at ¶ 90.) The plaintiff alleges that it was unlawful to "conceal" the securitization and that if he had known that his mortgage would be "bifurcated" and "securitized," he "would not have entered into the Mortgage Loan Agreement from the beginning, and that his reasonable reliance on Defendant(s) misrepresentations was detrimental to him, and a lucrative unjust enrichment for them." (Proposed Amended Complaint at ¶ 93.) He alleges that the defendants' actions were "deliberately cal-

culated to injure Plaintiff." (Proposed Amended Complaint at ¶ 97.)

Proposed Count V alleges that the defendants "intentionally misrepresented the nature and intent of the Mortgage Loan Agreement and that Defendant [Freemont] and Defendant MERS [were] entitled to exercise the power of sale provision contained in the Mortgage Agreement." (Proposed Amended Complaint at ¶ 99.) The plaintiff alleges that the failure to "disclose the true nature of the Loan Agreement, and the assignment of Plaintiff's Title to MERS was not only unconscionable, but an act which effectively breached the Agreement through bifurcation of the Note from the Mortgage thereby making the Agreement null and void." (Proposed Amended Complaint at ¶ 102.) He also challenges the initiation of the foreclosure action, again alleging a lack of standing.

As with the plaintiff's original fraud claim, these claims are owned by the bankruptcy estate because they arise out of the commencement of the foreclosure action and/or events occurring prior to that point in time, and the plaintiff lacks standing to bring them.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss (Doc. No. 21, Doc. No. 23, and Doc. No. 28) are hereby GRANTED, and the plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 33) is hereby DENIED.

The Clerk shall enter judgment in favor of the defendants Mortgage Electronic Registration Systems, Inc. (MERS), Citi-Mortgage, Inc., and Hunt Leibert, P.C.

It is so ordered.